UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUE FRITZ,

        Plaintiff,

v.

        File No.  1:07-CV-1254

CHARTER TOWNSHIP OF COMSTOCK,
and TIM HUDSON, individually and in his
official capacity as Supervisor for the
Charter Township of Comstock,

        HON. ROBERT HOLMES BELL

        Defendants.
                                            /

**O P I N I O N**

Plaintiff brought this action against a township and its supervisor alleging a federal retaliation claim and state tort claims. Defendants have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow Defendants' motion will be granted as to Plaintiff's federal claim and the Court will dismiss without prejudice Plaintiff's state law tort claims.

**I.**

Plaintiff Sue Fritz alleges in her complaint that she was an independent agent for the Farm Bureau Insurance Company ("Farm Bureau") doing business as the Fritz Agency out of her home office in Kalamazoo County. (Compl. ¶¶ 1, 7). In May 2005 Plaintiff purchased property in Comstock Township contingent on receiving approval for a home

office. (*Id.* at ¶ 8.) She applied for a Special Use Permit and attended meetings of the Comstock Planning Commission and Board of Trustees meetings. (*Id.* at ¶¶ 9-10.) Plaintiff noticed many procedural improprieties at those meetings. (*Id.* at ¶ 11.) Defendant Tim Hudson, Supervisor of Comstock Township, expressed irritation at her presence at Township meetings when she was not on the agenda. (*Id.* at ¶¶ 12-13.) Plaintiff's home office was approved in October 2005, but Plaintiff learned that Township zoning ordinances restricted the way she could conduct business. (*Id.* at ¶¶ 14, 16.) The Township denied Plaintiff's request for a zoning variance. (*Id.* at ¶¶ 17-18.) On February 29, 2006, the Township issued Plaintiff a signage violation. (*Id.* at 19.) In late 2005 and early 2006 citizens and Township officials made false statements about Plaintiff and her home office. (*Id.* at ¶¶ 15, 21.) In July 2006 Plaintiff complained to Defendant Hudson about Township officials falsely accusing her of zoning and other violations and about a neighbor's harassment. (*Id.* at ¶¶ 22-23.) On three occasions between July 28, 2006, and March 1, 2007, Defendant Hudson spoke with Plaintiff's Farm Bureau supervisor by phone and advised him that Plaintiff's comments at Township planning commission meetings and other conduct were antagonizing the people of Comstock Township and were damaging to Farm Bureau. (Compl. ¶¶ 24-28, 32, 34-36.) On March 22, 2007, Plaintiff's supervisor terminated her relationship with Farm Bureau because of "controversial community relations with your neighbors and with the local governmental unit." (Compl. ¶ 39.)

Plaintiff alleges in Count I of her complaint that Defendants retaliated against her for speaking out on matters of public interest by "threatening her" and "speaking to her employer in an unlawful, improper and unprivileged way." (Compl. ¶ 46.) She alleges that as a result of Defendants' unlawful actions she has suffered and will continue to suffer loss of income, loss of goodwill, damages to her personal and business reputation, loss of business opportunities, emotional distress, anger, and loss of enjoyment of life. (Compl. ¶ 43.) Plaintiff alleges in Count II of her complaint that Defendants are liable under state law for tortious interference with contract, tortious interference with business relationship or expectancy, and defamation.

Defendants have moved for judgment on the pleadings[1] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**II.**

The standard of review for a Rule 12(c) motion for judgment on the pleadings is nearly identical to that employed for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). In reviewing a Rule 12(c) motion the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim

---

[1] Although Defendants describe their motion as one for summary judgment, they rely on Rule 12(c) and they have not presented matters outside the pleadings. See Fed. R. Civ. P. 12(d).

that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). However, the court does not need to accept as true legal conclusions or unwarranted factual inferences. *Kottmyer*, 436 F.3d at 689.

### III.

Defendants contend that even if the Court accepts all of Plaintiff's allegations as true and construes the complaint in the light most favorable to Plaintiff, Plaintiff can prove no set of facts in support of her first amendment retaliation claim that would entitle her to relief.

To state a claim under 42 U.S.C. § 1983, a plaintiff must properly allege two elements: "(1) that the defendant was acting under color of state law, and (2) that the offending conduct deprived the plaintiff of rights secured under federal law." *Mezibov v. Allen*, 411 F.3d 712, 716-17 (6th Cir. 2005) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)).

Plaintiff has alleged that Defendant Hudson was employed as the Township Supervisor and that he had improper conversations with Plaintiff's employer/supervisor. Although Plaintiff's allegations do not make it clear whether Defendant Hudson was acting under color of state law when he had these conversations, the Court will assume, for purposes of this motion, that Plaintiff has adequately alleged state action.

The second element of a § 1983 claim requires a showing that the offending conduct deprived the plaintiff of rights secured under federal law. In order to allege retaliation based

upon the exercise of constitutional rights, the plaintiff must allege facts to support the following three elements:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Mezibov*, 411 F.3d at 717 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

There is no dispute that Plaintiff has adequately alleged that she engaged in protected conduct. Defendants contend, however, that she has not adequately alleged that an adverse action was taken against her by them. Defendants contend that, because they exercised no authority or control over Farm Bureau's decision to terminate Plaintiff, Plaintiff's termination does not constitute an adverse action for purposes of her retaliation claim. *See Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite the allegation that the defendants instigated the plaintiff's firing, the defendants did not have the ability to terminate the plaintiff, so the plaintiff did not set forth a valid First Amendment retaliation claim against them).

Plaintiff contends that, contrary to Defendants' assumptions, she is not claiming that her termination was the adverse action. (Dkt. No. 29, Pl.'s Br. in Opp. 3.) She contends that the adverse action is the following:

> Tim Hudson's acts of informing Farm Bureau of his dislike and opposition to Ms. Fritz's speech that she made in Comstock Township forums, that she should refrain from doing so in the future, and warning Farm Bureau that its

5

> presence in the community would be jeopardized if she did not refrain from doing so in the future . . . .

(*Id.* at 4.)

"[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

> The standard is an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort – like any tort – requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment.

*Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999).

"The term 'adverse action' is drawn from employment case law." *Thaddeus-X*, 175 F.3d at 396. Examples of "adverse action" in the employment context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. *Id.* The analysis of whether an act qualifies as an adverse action must be tailored to the circumstances of the specific retaliation claim. *Mezibov*, 411 F.3d at 721. As noted in *Thaddeus-X*, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." 175 F.3d at 398. "[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 398).

In some cases allegations of injury based solely on "embarrassment, humiliation, and emotional distress" stemming from the public release of information has been deemed sufficient to state a § 1983 retaliation claim. For example, in *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), Mr. and Mrs. Bloch alleged that the sheriff publicly released highly personal and extremely humiliating details about Mrs. Bloch's rape in response to the Bloch's public criticisms of the sheriff's investigation into the crime. The plaintiffs further alleged that the release of the details was unnecessary and had no nexus to their criticism of the investigation. While acknowledging the sheriff's right to respond to criticism, the Sixth Circuit held that the right to respond was not unlimited, and that the plaintiffs' allegations were sufficient to allege adverse action and to state a cognizable § 1983 retaliation claim. *Id.* at 676-80.

In *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), a judge made false public claims that the plaintiff had been "stalking, harassing, and otherwise intimidating her," and did so with a "retaliatory motive to publicly humiliate and denigrate" the plaintiff. *Id.* at 262-63. The Sixth Circuit held that the plaintiff had properly alleged retaliation in violation of 42 U.S.C. § 1983. *Id.* at 263.

*Bloch* and *Barrett* do not suggest that allegations of public disclosure of derogatory information is always sufficient to trigger constitutional protection. For example, in *Mattox*, a city council member and a fire department volunteer brought an action against the city, the police chief, the city manager and a police officer, alleging that the defendants retaliated against them for raising concerns about the fire department by releasing to the public a report

of their investigation into the fire department. *Mattox*, 183 F.3d at 517-18. The plaintiffs alleged that the report included statements that were unfavorable to them and revealed embarrassing personal details. The Sixth Circuit compared their case to *Bloch* and *Barrett* and concluded that neither plaintiff had alleged an adverse action sufficient to sustain a claim of First Amendment retaliation. *Mattox*, 183 F.3d at 523. As to the plaintiff city council member, the Sixth Circuit reasoned that a deliberate attempt to discredit her, even if initiated in retaliation for her actions in investigating the fire department, was not the type of "adverse action" against which the First Amendment protects because the alleged action was not equivalent to being fired by a government employer for expressing protected views, and "[p]ublic officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." *Id.* at 522. As to the plaintiff fire department volunteer, the Sixth Circuit reasoned that she failed to plead sufficient injury because, although she alleged disclosure of embarrassing information about her office affairs, the revelations at issue did not "rise to the level of those in *Bloch* or *Barrett*." *Id.* at 523.

The allegations in this case are more similar to the allegations in *Mattox* than to the allegations in *Bloch* and *Barrett*. Plaintiff has not alleged the disclosure of confidential, highly personal, or extremely humiliating details regarding her personal life such as those alleged in *Bloch*. Neither has she alleged that Defendants falsely accused her of a crime such as that alleged in *Barrett*. Plaintiff acknowledges that she attended and spoke out at public hearings and voiced her views in the local paper. She acknowledges that her actions

provoked public criticism. When a citizen voluntarily joins the public debate and publicly expresses her own opinions on public matters, she opens herself to criticism of her actions and views on those same public matters. Plaintiff complains that defendants communicated their dislike and opposition to her speech. (Pl.'s Br. in Opp. 4.) These communications clearly had a nexus to Plaintiff's own speech, and they did not exceed the right to respond to criticism. *See Samad v. Jenkins*, 845 F.2d 660, 663 (6th Cir. 1988) ("Ironically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out."). Under the circumstances of this case Plaintiff has not alleged the kind of adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct. Accordingly, Plaintiff's allegations are not sufficient to state a claim for First Amendment retaliation.

### III.

Defendants have requested dismissal of the state tort claims asserted in Count II on the basis of governmental immunity.

It is not necessary for the Court to address the state law immunity issue. District courts have discretion to refuse to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "'When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.'" *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583

(6th Cir. 2007) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).  The decision on whether to exercise supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity."  *Musson*, 89 F.3d at 1254 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  With these considerations in mind, the Court declines to exercise jurisdiction over Plaintiff's state law tort claims.  Accordingly, the state law tort claims asserted in Count II of Plaintiff's complaint will be dismissed without prejudice.

    An order and judgment consistent with this opinion will be entered.


Dated: <u>November 26, 2008</u>                              /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE