UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUE FRITZ,

        Plaintiff,

v.

CHARTER TOWNSHIP OF COMSTOCK,
a public body, and TIM HUDSON,
individually and in his official capacity as
Supervisor for the Charter Township of
Comstock,

        Defendants.
                                     /

File No. 1:07-CV-1254

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This action alleging First Amendment retaliation is before the Court on Defendants' second motion for summary judgment.[1] (Dkt. No. 60.) For the reasons that follow, Defendants' motion will be granted.

### I.

In 2005 Plaintiff Sue Fritz became an independent agent for the Farm Bureau Insurance Company ("Farm Bureau"), doing business as the Fritz Agency, out of an office in Comstock Township, in Kalamazoo County, Michigan. In June 2005, the Comstock Township Zoning Board of Appeals denied Plaintiff's request for a variance to operate an

---

[1] Although denominated a "second" motion for summary judgment, Plaintiff's first motion for summary judgment requested judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 25.)

in-home insurance office in a single family residential district. (Dkt. No. 66, Def.'s Br., Ex. 30, Zoning Bd. Mins.) However, after the Township Board adopted a zoning text amendment, the Planning Commission approved Plaintiff's application for a special exception use permit to operate an insurance office in a residential district. (Def.'s Ex. 4, Hudson Dep. 50; Def.'s Ex. 31, Twp. Bd. Mins.; Def.'s Ex. 32, Twp. Bd. Mins.; Def.'s Ex. 33, Planning Comm'n Mins.)

Plaintiff ran into conflicts with various Comstock Township departments and was critical of the manner in which the Township conducted its business. (Def.'s Ex. 8, Fritz Dep. 77-84.) She began attending meetings of the Township Board, the Zoning Board of Appeals, the Planning Commission, and the Parks Board, where she questioned various policies and procedures. (*Id.* at 85-89.)

Although the Township issued Plaintiff a special exception use permit to operate her insurance office in a residential district, Plaintiff was still subject to Township zoning ordinances restricting signage, parking, employees, alterations to the structure, and living in the house. (Def.'s Ex. 6, Goodman Dep. 22; Def.'s Ex. 35, Zoning Ord.) In late 2005 and early 2006, Township residents complained to the Township and to Farm Bureau that Plaintiff's home office did not comply with zoning requirements and was destroying the residential character of the neighborhood. (Def.'s Ex. 45, Complaints to Comstock Twp.; Def.'s Exs. 46-51, Complaints to Farm Bureau.)

On July 28, 2006, Dick Keilen, Fritz's supervisor at Farm Bureau, called Defendant Tim Hudson, Comstock Township Supervisor, to discuss the complaints. (Def.'s Ex. 5,

Keilen Dep. 31-32; Def.'s Ex. 3, Husdson Aff. ¶ 10.) On November 15, 2006, and March 1, 2007, Beth Goodman, Manager of Marketing Field Offices for Farm Bureau, called Hudson to inquire about the complaints and the Township requirements. (Def.'s Ex. 6, Goodman Dep. 20-21; Hudson Aff. ¶ 11.) Goodman's investigation revealed that the Township requirements were in direct conflict with Farm Bureau's requirements for a satellite office. (Goodman Dep. 22-23.)

During this same period of time, Farm Bureau was developing concerns regarding Fritz's employment with Farm Bureau. In particular, Keilen was concerned about her failure to apply herself at career school, her frustrations with Farm Bureau's requirements, her negative attitude, the disrespectful tone of her emails to her supervisor, her low productivity in property, casualty, and auto insurance sales, her statement that she was going to sue Farm Bureau, and her criticism of Farm Bureau to agents of other companies. (Keilen Dep. 13-16, 52-76; Def.'s Ex. 7, Luxmore Dep. 60-64; Def.'s Exs. 14-27, internal Farm Bureau emails and memos regarding Fritz.)

On March 22, 2007, Robert Luxmore, Farm Bureau's Regional Director of Agencies, terminated Fritz's relationship with Farm Bureau. The termination letter provides in pertinent part:

> The reasons for this termination relate to your working relationship with employees of the Company and/or other Farm Bureau Insurance companies and to your controversial community relations with your neighbors and with the local governmental unit. Their comments and complaints have led the Company to conclude that your practices and methods are resulting in contentious and undesirable public controversy. The Company is concerned that this detracts from the public's image and perception of the Company, in

3

> particular, and the Farm Bureau organization, in general. As a result, the Company has concluded that it is not in the best interests of the Company to continue your Agent Employment Agreement.

(Def.'s Ex. 11, 03/22/2007 letter from Luxmore to Fritz.)

Plaintiff filed this action alleging that Defendants Comstock Township and Tim Hudson retaliated against her for her protected speech in violation of the First Amendment. Plaintiff also alleged state law claims of tortious interference with contract, tortious interference with business relationship or expectancy, and defamation. Plaintiff's First Amendment retaliation claim was dismissed for failure to state a claim, and her state law claims were dismissed without prejudice. (Dkt. No. 44.) On appeal, the Sixth Circuit reversed the dismissal of Plaintiff's First Amendment retaliation claim and remanded for further proceedings. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010). Plaintiff's state law claims, which she refiled in the Kalamazoo County Circuit Court, have all been dismissed. (Def.'s Exs. 1, 2, State Cir. Ct. Orders.) Defendants have filed a motion for summary judgment on Plaintiff's First Amendment retaliation claim, the sole remaining claim before this Court.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If

4

Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

In order to survive summary judgment on her § 1983 First Amendment retaliation claim, Plaintiff must present sufficient evidence to create a triable issue of fact as to each of the following elements:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir .2005)). "[I]f the plaintiff establishes the three elements,

the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999) (en banc).

**1. Protected Conduct**

There is no question in this case that Plaintiff engaged in protected conduct by speaking out at public meetings and writing letters to the editor of the local newspaper. *See Fritz*, 592 F.3d at 723. However, not all of Plaintiff's activities that were of concern to Defendants constituted protected speech. For example, engaging in violations of the Township's ordinances is not protected conduct. *See Banks v. City of Whitehall*, 344 F.3d 550, 554-55 (6th Cir. 2003) ("There exists no "fundamental" right in our legal system to violate a municipality's codes and regulations with impunity . . . .").

**2. Adverse Action**

As noted by the Sixth Circuit, the primary disagreement in this case is "whether there was an adverse action by the Defendants against Plaintiff that would 'deter a person of ordinary firmness from continuing to engage' in the kinds of protected conduct in which Plaintiff was engaging." *Fritz*, 592 F.3d at 723 (quoting *Mezibov*, 411 F.3d at 717).

Because Plaintiff is not a public employee, official, or prisoner, the level of injury she must show would be "the lower limit of a cognizable injury for a First Amendment retaliation claim." *Fritz*, 592 F.3d at 724. Nevertheless, the adverse action must still be substantial enough to constitute a cognizable injury:

> [A]s a tort statute, § 1983 requires injury and "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."

*Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Moreover, in analyzing the extent of the "adverse action" required for retaliation claims against public officials, courts must consider the public official's own First Amendment rights, and right of reply. *See Mezibov*, 411 F.3d at 722 (noting that in analyzing the extent of the "adverse action" alleged against a prosecutor, the court must be "careful to take into account only those comments made by [the prosecutor] that could reasonably be construed as defamatory, lest we trample on the First Amendment rights that [the prosecutor] retains as a government official"); *see also McBride v. Village of Michiana*, 100 F.3d 457, 462 (6th Cir. 1996) (cautioning that the proper exercise by government officials of their own free speech rights cannot serve as the basis for imposing liability for First Amendment retaliation).

> It would be inconsistent with core First Amendment principles and basic notions of fairness not to allow [a government official] to respond to [allegations of unethical conduct] to the extent his out-of-court comments were not defamatory, even if that response was (quite naturally) prompted by constitutionally protected speech by [the plaintiff].

*Mezibov*, 411 F.3d at 722.

Plaintiff has clarified that the adverse action in this case is not the termination of her employment by Farm Bureau, or the denial of her zoning and signage variances.[2] (Dkt. No. 69, Pl.'s Resp. 2, 7, 9-10, 12, 18.) Rather, the adverse action Plaintiff relies on is "the communication and threats by Mr. Hudson to Farm Bureau." (*Id.* at 18.) Plaintiff contends that:

> Mr. Hudson took adverse action against Ms. Fritz by attempting to threaten Ms. Fritz's business relationship with Farm Bureau, by making statements to Farm Bureau designated to communicate to Farm Bureau both that it would be in its interest in terms of its dealing with Comstock to rein in Ms. Fritz's exercise of her First Amendment rights and that it would be better for Farm Bureau to cancel its contract with Ms. Fritz.

(Pl.'s Resp. 9-10.)

Mr. Hudson participated in four telephone conversations with two Farm Bureau employees. All four calls were initiated by the Farm Bureau employees. (Hudson Aff. ¶¶ 10, 11.) On July 28, 2006, Hudson spoke with Dick Keilen, Plaintiff's supervisor at Farm Bureau. Plaintiff attributes the following statements to Hudson, which she contends were false, misleading, or both:

1. Fritz was not making friends,

2. Fritz did not live in her Comstock home,

3. Fritz said things in Planning Commission meetings that she should not say,

---

[2]This is so despite the Sixth Circuit's observation that "Plaintiff alleges essentially two forms of adverse action in her complaint: 1) the three conversations between Defendant Hudson and her employer; and 2) the denial of her zoning and signage variances." *Fritz*, 592 F.3d at 725.

8

4. there was a petition in Fritz's neighborhood against her,

5. Fritz was very antagonistic against Comstock,

6. Fritz wrote a nasty letter to the editor of the Kalamazoo Gazette bashing Comstock,

7. if Fritz would tone down her speech and remove her sign, her problems might go away, and

8. Fritz was in violation of an ordinance prohibiting solicitation of business clients.

(Pl.'s Resp. 3.) On August 8, 2006, Keilen called Hudson to advise him that Fritz no longer had an employee working in her office. (Keilen Dep. 45-46.)

On November 15, 2006, Hudson spoke with Beth Goodman, Manager of Marketing Field Offices for Farm Bureau. Plaintiff attributes the following statements to Hudson:

1. Fritz pushes the envelope as far as she can,

2. Fritz's neighborhood was not happy,

3. Fritz's neighbor Scott Boucher can be pretty scary,

4. Fritz can be pretty scary herself,

5. the neighborhood was up in arms, and

6. Farm Bureau needed to be concerned about its reputation as a result of the publicity and Fritz's conduct.

(Pl.'s Resp. 4.)

On March 1, 2007, Hudson spoke with Goodman a second time. Plaintiff attributes the following statements to Hudson during that telephone call:

1. Fritz had the Township in an uproar,

2. he was about to lose his Board over it,

3. others in the county could confirm that the Township was in an uproar as a result of Fritz's conduct,

4. Fritz wanted to know about every zoning request,

5. Fritz wanted to be present at all Comstock meetings,

6. He was sick of Fritz and her video camera,

7. Fritz cannot be selling insurance because of the extent of her other activities,

8. people refuse to talk to Fritz,

9. Fritz's speech and conduct was damaging Farm Bureau's business and business prospects.

(Pl.'s Resp. 4-5.)

For the most part, the comments Hudson allegedly made are simply expressions of opinion.[3] As the Sixth Circuit recognized, to the extent Hudson expressed his opinion of Plaintiff's speech and his opinion of its effect on Plaintiff's reputation in the Township, "[t]hat kind of speech is probably most akin to protected speech under the First Amendment, falling under Defendant Hudson's right to respond to Plaintiff's criticisms that were made in the public sphere." *Fritz*, 592 F.3d at 727 (citing *Samad v. Jenkins*, 845 F.2d 660, 663 (6th

---

[3]The statements are culled from notes taken by Keilen and Goodman during their telephone conversations. Keilen and Goodman had difficulty recalling whether the notes reflected direct quotes from Hudson, a summary of what Hudson said, what they heard from others, or what they themselves were thinking during the conversations. (Goodman Dep. 24, 26, 27, 44, 45, 59-60, 62, 64, 78; Keilen Dep. 35-38, 115-16.) Nevertheless, for purposes of this opinion, the Court will assume that all of the notes reflect Hudson's statements.

Cir. 1988)). Accordingly, to the extent Hudson was simply expressing his opinion, or was exercising his right of reply, his speech fell within his constitutionally protected right to respond. *Fritz*, 592 F.3d at 728.

To the extent Plaintiff contends that Hudson made factually false statements, the Court bears in mind that "[d]efamatory statements motivated in part by a person's exercise of their First Amendment rights can be, but are not always, legally sufficient standing alone for a claim of adverse action under the framework of this Circuit." *Fritz*, 592 F.3d at 726. "The kinds of statements – both defamatory and not – that have been interpreted as adverse actions for the purposes of a retaliation claim are of a fundamentally different character than Plaintiff's allegations that Defendant Hudson falsely stated that she was violating ordinances and that there was a petition against her in the neighborhood." *Fritz*, 592 F.3d at 727. Defendant Hudson's allegedly false statements, taken on their own, were not of such a character that they amounted to an adverse action "because they were not highly embarrassing nor did they impugn Plaintiff's character." *Fritz*, 592 F.3d at 727.

Plaintiff contends that even if Hudson's statements viewed individually do not constitute adverse action, taken as a whole, they raise a question of fact as to whether Hudson threatened Plaintiff's economic livelihood. The Sixth Circuit indicated that:

> If Defendant Hudson in fact made statements that were designed to communicate to Farm Bureau that it would be in the business' interest in terms of its dealings in Comstock to reign in Plaintiff's exercise of her First Amendment rights, or that it would be better for Farm Bureau to cancel its contract with Plaintiff, that would be an adverse action sufficient to support a claim of retaliation.

11

*Id.* at 725. The Sixth Circuit reasoned that "[a] person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior." *Id.* at 726.

> The fact that the public official did not have the power to actually terminate the employment makes this case close, but since Defendant Hudson and the other Comstock Defendants did have the power to substantially affect Farm Bureau's ability to do business in Comstock through their role in enacting township ordinances and making zoning decisions, the alleged threats are more tangible.

*Id.* at 726 (citation omitted). "Negative comments made by Defendant Hudson, especially about the possible damage to Farm Bureau's business, are sufficient to rise to the level of 'a threat to take action tangibly affecting employment status.'" *Id.* at 728 (quoting *Samad*, 845 F.2d at 663).

In an attempt to bring her case within the guidelines set forth in the Sixth Circuit's opinion, Plaintiff now baldly asserts that "Mr. Hudson's statements to Mr. Keilen were, clearly, intended to communicate to Farm Bureau that it would be in its interest in terms of its dealings in Comstock to reign in Ms. Fritz's exercise of her First Amendment Rights and cancel its contract with Ms. Fritz. Mr. Keilen, certainly interpreted them this way." (Pl.'s Resp. 12.) Plaintiff also asserts that "Mr. Hudson made similar coercive or threatening comments to Beth Goodman of Farm Bureau." (*Id.*)

The record does not support Plaintiff's assertions that Hudson or anyone else on behalf of the Township threatened or pressured Farm Bureau to discharge Plaintiff. Hudson did not initiate any contacts with Farm Bureau. It was Farm Bureau employees who called

12

Hudson to discuss Plaintiff. Plaintiff has not identified any statements by Hudson that could reasonably be construed as a threat directed at Farm Bureau, nor has she identified any statements from which such a threat could reasonably be inferred. Hudson denies making any threat to Farm Bureau, (Hudson Aff. ¶¶ 13-16), and Farm Bureau's employees uniformly testified that they did not perceive any threat. Keilen testified that Hudson never asked or encouraged him to discharge Fritz or to take any disciplinary action against Fritz. (Keilen Dep. 46.) He testified that Fritz would have been discharged even if he had never spoken with Hudson. (Keilen Dep. 79.) To the extent Hudson commented to Keilen that Fritz was not making friends, Keilen was already aware of this fact based on complaints he had received from Fritz's neighbors. (Keilen Dep. 34, 112-13; Hudson Dep. 139.) Similarly, Luxmore testified that Hudson never requested Farm Bureau to terminate or discipline Fritz, that he never felt any pressure by the Township to terminate or discipline Fritz, and that he "absolutely" did not feel that he was forced to terminate Fritz as a result of the Township's ordinances. (Luxmore Dep. 69.) Goodman did not suggest that she felt any pressure from the Township regarding Fritz. After Goodman's investigation led her to believe that Fritz's office could not simultaneously comply with both the Township's and Farm Bureau's requirements, Goodman turned the matter over to Keilen and Luxmore and had no further involvement in Fritz's employment. (Goodman Dep. 35-36, 47.) To the extent Hudson made comments to Goodman that Farm Bureau needed to be concerned about negative publicity, such comments did not present anything new to Goodman, because it was precisely Goodman's own concerns about the complaints and Farm Bureau's reputation that prompted

13

Goodman to contact the Township about Fritz's home office.  (*Id.* at 28, 43-45.)

It is also significant that Hudson did not have authority to direct that any Township action be taken against Farm Bureau.  Since 1996, Hudson has not served as a member of any Township administrative body with any decision-making authority, such as the Planning Commission, the Zoning Board of Appeals, or the Construction Board of Appeals.  (Hudson Aff. ¶ 5.)  Hudson has no power or authority, in his capacity as Township Supervisor or otherwise, to enact Township ordinances or to make Township zoning decisions, nor does he have any authority or power to take any Township actions against Farm Bureau.  (*Id.* at ¶¶ 7, 8.)

Plaintiff's bald assertion that the Township communicated to Farm Bureau that it would be adversely affected in its dealings with the Township unless it controlled or discharged Fritz is simply not supported by the evidence.  There is no evidence that Hudson ever suggested or implied that the Township would make it difficult for Farm Bureau if it did not curb Plaintiff's speech.  Hudson's statements cannot be viewed as "a threat to take action tangibly affecting employment status" unless they were designed to pressure or threaten the entity that could take such action.  *See Fritz*, 592 F.3d at 728 (quoting *Samad*, 845 F.2d at 663).  The lack of evidence that Hudson had any authority over Plaintiff's employment, that he had any authority over any Township body that could affect Farm Bureau, or that he exerted even the slightest pressure or threat against Farm Bureau, is fatal to Plaintiff's claim.  Based upon the record as a whole, viewed in the light most favorable to Plaintiff, the Court concludes that the evidence is not sufficient to create a triable issue of fact as to the adverse

action element of Plaintiff's retaliation claim. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## IV.

Plaintiff contends that the Township of Comstock is liable to her for Hudson's retaliatory conduct. Plaintiff recognizes that municipalities do not have respondeat superior liability, and that she must show that there was a municipal policy, custom or practice that caused the deprivation of her constitutional rights. (Pl.'s Resp. 19 (citing *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978).) Plaintiff contends that Comstock Township is liable for Hudson's unconstitutional conduct because he was the final decisionmaker for the Township. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." )

The parties dispute whether Hudson had final decisionmaking authority for Comstock Township. The Court need not resolve this issue, however, because Plaintiff has not shown that Hudson engaged in unconstitutional retaliation. Because Hudson did not engage in unconstitutional conduct, no liability can attach to the Township based upon his actions.

## V.

Defendants have argued that Defendant Hudson is entitled to qualified immunity. A government official is entitled to qualified immunity on summary judgment "'unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right;

15

and (2) the right was clearly established.'" *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). If the facts do not show that the defendant's conduct violated a constitutional right, the analysis need not proceed any further because the defendant does not need the protection of qualified immunity. *Id.* at 460. Because Plaintiff has not established a constitutional violation, the Court need not consider Defendants' alternative argument that Defendant Hudson is entitled to qualified immunity.

## VI.

For the reasons stated in this opinion, Defendants' motion for summary judgment will be granted, and judgment will be entered in their favor.

An order and judgment consistent with this opinion will be entered.


Dated: July 15, 2010            /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE